UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

VOLKSWAGEN GROUP OF
AMERICA, INC.,

                Plaintiff,

     -against-

GPB CAPITAL HOLDINGS, LLC,

                Defendant.

----------------------------------------------------X

NO.: 20 CV 1043 (AT)(SN)

**AMENDED COMPLAINT**

       Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc., ("VWoA") brings this declaratory judgment action against GPB Capital Holdings, LLC ("GPB") and respectfully pleads as follows:

## <u>PARTIES</u>

       1.    VWoA is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia.

       2.    GPB is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.  On February 14, 2019, David Rosenberg, signatory to the Corporate Shareholder Addendum, represented that David Gentile, a natural person, is the sole beneficial and record member of all the outstanding interest of GPB, and maintains an address at 1581 Franklin Ave., Mineola, New York 11501.  (*See* Amended Compl. Ex. 6, pp. 60-61).  On information and belief, David Gentile is a citizen of New York.  As such, GPB is a citizen of Delaware and New York.

3.      Thus, there is complete diversity between the parties.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332.  There is complete diversity between VWoA and GPB and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  This litigation involves an agreement with a stated value in excess of the minimum requirements for purposes of diversity jurisdiction.

5.      This Court may exercise personal jurisdiction over GPB by virtue of GPB residing in the Southern District of New York and transacting business in this district.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant GPB resides in this judicial district.

## FACTS GIVING RISE TO THIS ACTION

**A.      GPB Capital Holdings, LLC History of Breach**

7.      Upon information and belief, GPB Capital Holdings, LLC, along with its other similarly named "GPB" entities (collectively "GPB Group"), claimed to be an alternative asset management firm based in Mineola, New York.  Based on its publicly available information, the GPB Group was founded by David Gentile and is now based in New York, New York.  Also, on information and belief, the GPB Group decided to "invest" in motor vehicle dealerships in or around 2011.

8.      VWoA first became aware of the GPB Group in 2014 through a purported acquisition of an ownership interest in an existing Volkswagen dealership known as Lash Auto Group, LLC dba Lash Volkswagen of White Plains ("Lash").  Lash and the GPB

2

Group entered into one or more purchase agreements for an interest in Lash during 2013 through which GPB acquired its initial ownership in Lash without the requisite prior notice and consent of VWoA as is required by contract and by applicable law.

9.      The improper ownership transfer of Lash, as well as a related Volkswagen dealership known as Lash Auto Group 2, LLC dba Volkswagen Oneonta, resulted in a notice of termination, followed by litigation filed in the Supreme Court of the State of New York, County of Westchester, which was later settled by a Confidential Settlement Agreement and Release (the "Lash Settlement").

10.      The Rosenberg family has owned and operated motor vehicle dealerships throughout the upper eastern coastal region for over fifty years.  The late Ira Rosenberg, David Rosenberg's father, was a well-known motor vehicle dealership owner/manager. David Rosenberg has been involved in the motor vehicle dealership business for many years.  David Rosenberg had an established, successful, and well regarded track record as the owner/manager of several motor vehicle dealerships, including VWoA dealerships.

11.      In or around May of 2017, certain GPB Group entities entered into a Purchase and Sale Agreement with Rosenberg for the purchase of a majority interest in Saco Auto Holdings VW, LLC dba Prime Volkswagen ("Prime"), as well as other dealerships operated by Rosenberg.  Under this Purchase and Sale Agreement Rosenberg was to continue to have a material ownership interest in his dealerships and would continue to operate them as the chief managing officer with the power to act independent of GPB's influence or control.

12.     Upon information and belief, later in 2017, Rosenberg agreed to operate the GPB Group's entire portfolio of motor vehicle dealerships, and he became the Chief Executive Officer, President, and Manager of the GPB automotive related business entities, including but not limited to Automile Holdings, LLC, Automile Parent Holdings, LLC, GPB Prime Holdings, LLC, and the Prime Automotive Group, which is a trade name for the GPB automotive businesses.

13.     When VWoA received information regarding the proposed purchase by GPB of a majority interest in Prime, the prior litigation and settlement of the Lash dealership caused VWoA to review the ownership of the Lash dealership.  As a result, it was discovered that the terms of the prior settlement had not been met and that GPB had acquired the ownership that was directly contrary to the terms of the Lash Settlement.

14.     Notwithstanding the breach of the terms of the Lash Settlement, VWoA, at the request of GPB Group and Rosenberg, continued with the review of the proposed sale of the Prime dealership, as well as another Volkswagen dealership located in Watertown NY.  In order to prevent a situation similar to what had occurred with the Lash dealership, and in consideration for VWoA's agreement not to enforce the terms of that settlement agreement, VWoA and GPB agreed to the terms of a separate agreement as described below.

**B.      The Business Relationship and Settlement Agreement**

15.     On October 19, 2017, VWoA and GPB entered into a Business Relationship and Settlement Agreement and subsequently, its amendments (collectively, the "BRA"). A true and correct copy of the BRA with its exhibits "A" through "J" is attached to this

Amended Complaint as Exhibit "1," along with the First Amendment to Business Relationship and Settlement Agreement with its exhibits "A" and "E" as Exhibit "2." The BRA was specifically entered into due to the prior misrepresentations regarding ownership of the Lash dealership and the failure of GPB to comply with the terms of the prior settlement.  The BRA covered the existing dealerships owned by GPB (including Lash of White Plains and Volkswagen Oneonta) as well as subsequently acquired dealerships.

16.     The Volkswagen dealerships that currently include an ownership interest by GPB are:

     a.  Saco Auto Holdings VW, LLC d/b/a Prime Volkswagen ("Prime") located at 784 Portland Road, Saco, Maine 04072;

     b.  FX Caprara VW, LLC dba FX Caprara Volkswagen ("Caprara") located at 18493 US Route 11, Watertown, New York 13601 and;

     c.  AMR Auto Holdings-VWN, LLC d/b/a Volkswagen of Norwood ("Norwood") located at 1280 Providence Highway, Norwood, Massachusetts, 02062.

17.     Under the BRA, and specifically to avoid a situation similar to that of the Lash dealership, VWoA specifically stated that Rosenberg was the approved operator of the Volkswagen dealerships and that "neither GPB Group nor any of its owners (whether direct or indirect, actual or beneficial) shall ever exercise any operational control, directly or indirectly, over Dealer, and [ ] neither GPB Group nor any of its owners (whether direct or indirect, actual or beneficial) shall have any authority to direct or control the Approved Operators in the exercise of their duties and responsibilities in the management of Dealer." Ex. 1 at p.4, ¶ 7D.

18.     David Rosenberg ("Rosenberg"), due to his personal business experience, is the only Approved Operator for all Dealerships. Ex. 2 at p. 6, exhibit E thereto.  As the Approved Operator, Rosenberg is to exercise full operational control over each Dealership in addition to maintaining at all times the full authority to vote all ownership interests of any GPB Group company as such related in any way to the operations of each Dealership. Ex. 1 at p.4, § 7D.

19.     GPB unilaterally removed Rosenberg from his approved position at the Volkswagen dealerships, and unilaterally appointed an unknown individual as the Approved Operator without any prior notice or approval by VWoA.  Regardless, whom GPB proposed to replace Rosenberg is a GPB officer and employee and no such person shall ever exercise any operational control, directly or indirectly, over the dealerships.  In addition, VWoA was not provided prior notice as required by the BRA, and the actions of GPB are contrary to VWoA interests.  This is exactly a reason for the BRA - to protect VWoA from arbitrary GPB actions that serve only GPB's interest.  GPB has once again simply disregarded their contractual commitments.

20.     Section 12 of the BRA further provides VWoA the following rights:

> A. VWoA shall have the right to review and approve any sale, acquisition or change of ownership or voting rights of GPB Group ("Ownership Change Event"). GPB Group shall notify VWoA of any proposed Ownership Change Event at least sixty (60) days prior to the date of any Ownership Change Event.

> B. If VWoA determines, in its discretion, that the Ownership Change Event would result in an entity or a natural person obtaining an ownership or voting rights interest that is incompatible with VWoA's dealer qualification standards,

6

> performance requirements or other VWoA interests, VWoA
> shall have the right to require that, within ninety (90) days of
> notice from VWoA invoking this provision, GPB shall (a)
> transfer all interest in all Dealerships to Bona Fide Transferees
> (subject to Section 7, above); or (b) voluntarily terminate the
> [Dealership Agreements] associated with each of the Dealers.
> For purposes of this paragraph Bona Fide Transferee shall
> mean an independent third party which does not include any
> member of the GPB Group in any ownership capacity.

In the event that VWoA triggers this 90-day divestiture period, GPB must "present to

VWoA an Asset Purchase Agreement or other transfer agreement providing for the transfer

of the Dealership's ownership and assets to a Bona Fide Transferee." Ex. 1 at, § 7E(ii). If

GPB fails to divest its interests in the Dealership within 90 days:

> GPB shall cause, and take all actions necessary to ensure that, the
> relevant Dealership's [Dealership Agreement] is voluntarily
> terminated, including the execution of all of VWoA's then-customary
> forms for the voluntary termination of a DA.

Ex. 1, § 7E(iv).

21.     The parties further acknowledged in the BRA that any breach or failure to

comply with the terms of the BRA would result in "irreparable harm and substantial injury

to the non-breaching Party." Ex. A, § 17. As a result, the non-breaching party "shall be

entitled to specific performance. . . to enforce such provisions. . . ." Ex. A, § 17.

22.     As part of the BRA, VWoA was provided with information regarding the

ownership and control of GPB Group and its subsidiaries. Automile Parent Holdings, LLC

is the owner of the Prime and Norwood Dealerships and its approved Managers are David

Gentile, Manuel Vianna, James Prestiano, and David Rosenberg. Capstone Automotive

Group, LLC, a GPB Group entity, is the owner of the Caprara Dealership and its approved

Managers are David Gentile, David Rosenberg, Manuel Vianna, Brian Marshall, and James Prestiano.

### C.    GPB Removes Rosenberg and all approved Managers

23.    On information and belief, sometime before or on September 15, 2019, GPB removed David Gentile, Manuel Vianna, and James Prestiano from the Automile Holdings, LLC board and appointed Kevin Westfall, Jovan Sijan, Nico Gutierrez, and Mike Frost without prior notice to VWoA or with VWoA's consent.

24.    On information and belief, on the morning of September 16, 2019, Rosenberg was given written notice of termination, dated September 16, 2019 and signed by Kevin Westfall. Rosenberg (not GPB) provided a copy of this notice to VWoA on the date it was received (GPB later provided a copy of the notice as well).  A true and correct copy of September 16, 2019 notice of termination that Rosenberg provided to VWoA is attached as "Exhibit 3."  Automile Holdings, LLC terminated David Rosenberg without notice to VWoA or with VWoA's consent.

25.    Rosenberg communicated to VWoA that he had been terminated by Kevin Westfall as CEO and President of Automile Holdings, LLC, replacing him with Kevin Westfall as interim CEO.  On information and belief, Kevin Westfall also replaced David Rosenberg as the CEO and President of Capstone Automotive Group, LLC.  GPB notified VWoA of these events by letter stating that Rosenberg was removed as CEO and also from any other GPB officer positions. Based on GPB's September 16, 2019 letter, it is certain that Rosenberg was also removed as Manager of Capstone Automotive Group, LLC.  GPB

unilaterally changed all approved managers and operators from the GPB ownership structure, in direct contravention of the terms of the BRA.

26.     On information and belief, GPB named a new CEO, Todd Skelton, on January 8, 2020 with his appointment effective as of January 1, 2020. On information and belief, Todd Skelton also serves as the CEO and President of Automile Holdings, LLC and as the Manager of Capstone Automotive Group, LLC.  Again, VWoA was neither provided prior written notice of the action nor did GPB obtain VWoA's consent.

**D.     GPB's Failure to Divest its Ownership Interests Triggered its Obligation to Voluntary Terminate the Dealership Agreements**

27.     By letter dated October 31, 2019, VWoA provided GPB a Notice to Divest and demanded that GPB transfer all ownership interests in the Prime, Caprara, and Norwood dealerships to Bona Fide Transferees within ninety days. A true and correct copy of VWoA's Notice to Divest is attached as "Exhibit 4."  The ninety days ended on or about January 29, 2020.

28.     In response to the Notice to Divest, Joseph Girardot, Chief Legal Counsel of Prime Automotive Group—which is not a business entity but a business trade name—sent VWoA a letter on January 23, 2020 repudiating GPB's obligations under the BRA. The letter stated that GPB planned to divest its interest in Caprara only and would provide VWoA an asset purchase agreement with a third-party transferee. GPB further stated that it would not divest its interests in Prime and Norwood. A true and correct copy of GPB's response is attached as "Exhibit 5."

29.     Although GPB stated that it would submit an asset purchase agreement to VWoA evidencing its transfer of Caprara to a third-party, it failed to do so within the 90-day period.   GPB also did not provide VWoA with any asset purchase agreements regarding GPB's transfer of Prime and Norwood to a Bona Fide Transferee.

30.     Instead, on or about January 28, 2020, GPB caused its Dealerships - Prime, Norwood, and Caprara - to file a non-binding arbitration demand with the American Arbitration Association against VWoA challenging VWoA's rights under the BRA (the "Arbitration Action"). A true and correct copy of the Demand for Non-Binding Arbitration and Statement of Claims (less its exhibits) is attached as "Exhibit 6." The Arbitration Action not only is a repudiation by GPB of its obligations under the BRA but also is an act in breach of the BRA.

31.     In addition to the Arbitration Action repudiating the obligations of the BRA, GPB caused the Arbitration Action to be filed by the dealership entities, none of which were given notice to divest, and all of which are prevented from demanding arbitration due to the 2002 amendment to the Federal Arbitration Act as shown below.  GPB Group cannot use the dealership entities as a shield for its own breach.

32.     Along with other covenants set forth in the BRA as to VWoA's rights and remedies, GPB agreed that if any or all three Dealerships were terminated then neither GPB nor any of the Dealerships would file a legal protest, civil or administrative action, or any other legal proceeding to prevent or delay the effect of the termination.  Ex. 1 at p. 9, ¶ 14. GPB, on behalf of itself and the Dealerships, further agreed that they shall not seek monetary damages or other legal or equitable remedy from any court or administrative

agency related to the termination. *Id.* And GPB agreed that if it or a Dealership violated the no contest covenant then GPB shall pay any and all of VWoA's attorney fees and legal costs associated with the defense of such legal, administrative or equitable action and, in addition, shall indemnify and hold VWoA harmless from any monetary damages, equitable judgments or fees and costs resulting from any legal, administrative, or equitable proceeding. *Id.*

### FIRST CLAIM FOR RELIEF:<br>DECLARATORY JUDGMENT

33.    VWoA incorporates all preceding paragraphs as though set forth in full herein. GPB Capital Holdings, LLC cannot use the Dealerships to collaterally attack the BRA by requiring that VWoA submit to arbitration, whether binding or non-binding, of any dispute with GPB or the Dealerships. No agreement exists in the BRA whereby VWoA and GPB Capital Holdings, LLC agreed to arbitrate disputes.

34.    Although the dealer agreements do contain an arbitration provision, those agreements are not the contractual basis for VWoA's notice to divest sent to GPB Capital Holdings, LLC. The notice to divest arises under the BRA between VWoA and GPB Capital Holdings, LLC. VWoA sent its notice to divest to GPB Capital Holdings, LLC, not to the Dealerships. GPB Capital Holdings, LLC cannot use the Dealerships to force arbitration upon VWoA.

35.    Despite the arbitration provision set forth in the dealer agreement with the Dealerships, federal law controls on arbitrability of disputes between motor vehicle manufacturers and their dealers. 15 U.S.C. § 1226. The Federal Arbitration Act (9 U.S.C.

§ 1, *et seq*.) applies to the dealer agreement the Dealerships seek to use in requiring non-binding arbitration. In 2002, Congress passed the Motor Vehicle Franchise Contract Arbitration Fairness Act (the "Arbitration Fairness Act"), which provides an express *exception* to the Federal Arbitration Act ("FAA"), by making pre-dispute arbitration provisions contained in motor vehicle franchise contracts between motor vehicle manufacturers and motor vehicle dealers *unenforceable* under the FAA.  Specifically, the Arbitration Fairness Act provides:

> (2) **Consent required**.  Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if *after* such controversy arises *all parties* to such controversy *consent in writing* to use arbitration to settle such controversy.

15 U.S.C. § 1226(a)(2) (emphasis added).  Thus, under the Arbitration Fairness Act, an arbitration provision contained in a motor vehicle franchise contract can only be enforced if (1) *all parties* consent, (2) in writing to use arbitration, and then (3) *after* a controversy covered by the arbitration provision arises.  *See id.*  VWoA does not consent to arbitration.

36.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § § 2201, 2202, VWoA seeks the appropriate order, decree, or judgment that GPB Capital Holdings, LLC, whether directly or through its Dealerships, cannot unilaterally compel VWoA to arbitrate disputes, whether such disputes are with GPB Capital Holdings, LLC or with any of the Dealerships that GPB Capital Holdings, LLC owns or controls.

37.     This declaratory judgment claim is presently ripe because GPB Capital Holdings, LLC has repudiated VWoA's express remedies in the BRA and then seeks to

use the three Dealerships to collaterally attack the no contest provision in the BRA, and require that VWoA arbitrate whether the rights and remedies in the BRA are to be enforced. Thus, an actual and justiciable case or controversy presently exists and judgment will serve a useful purpose in settling the legal relations at issue and provide to VWoA relief from the insecurity and controversy giving rise to this proceeding.  Such a declaration will effectively adjudicate the rights of the parties.

**SECOND CLAIM FOR RELIEF:**
**<u>DECLARATORY JUDGMENT</u>**

38.     VWoA incorporates all preceding paragraphs as though set forth in full herein.  Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § § 2201, 2202, VWoA seeks the appropriate order, decree, or judgment  that: (1) the GPB Group's change of directors for Automile Holdings, LLC, Automile Parent Holdings, LLC, GPB Prime Holdings, LLC, and Capstone Automotive Group, LLC entitles VWoA to the remedies agreed upon by the parties in BRA; (2) regardless of the unauthorized director changes for the GPB Group entities, the removal and/or termination of David Rosenberg is an event under the BRA that entitles VWoA to the remedies set forth in the BRA; (3) GPB Capital Holdings, LLC's failure to comply with VWoA's divestiture notice entitles VWoA to the remedy of voluntary termination as set forth therein; and (4) VWoA is entitled to the remedy of termination of the Dealerships and that such termination takes effect upon entry of the appropriate court order, decree, or judgment.

39.     This declaratory judgment claim is presently ripe because GPB has repudiated VWoA's express remedies in the BRA. Thus, an actual and justiciable case or

controversy presently exists and judgment will serve a useful purpose in settling the legal relations at issue and provide to VWoA relief from the insecurity and controversy giving rise to this proceeding. Such a declaration will effectively adjudicate the rights of the parties.

**THIRD CLAIM FOR RELIEF:**
**<u>SPECIFIC PERFORMANCE</u>**

40.    VWoA incorporates all preceding paragraphs as though set forth in full herein. The subject matter of the BRA between VWoA and GPB Capital Holdings, LLC is unique. Money damages can neither remedy the breach nor make VWoA whole. Only the remedy of specific performance places VWoA in the position it would have enjoyed had the contract been fully performed once GPB breached.

41.    The aforementioned removal of Rosenberg constitutes an "Ownership Change Event" under the BRA. The BRA grants to VWoA the discretion to decide if such event results in an interest that is incompatible with VWoA's interests. VWoA made such decision and triggered its right to require GPB to divest. Exhibit 4. GPB not only failed or refused to comply with the divestiture requirement but also purports to repudiate any requirement to divest the Dealerships or to bring about their voluntary termination. Exhibits 5 and 6.

42.    Having failed or refused to comply with the divestiture requirement, GPB is required to cause the Dealerships to voluntarily terminate. Exhibit 1, p. 8, ¶ 12.B. Moreover, having repudiated the BRA, GPB is required to cause the Dealerships to

voluntarily terminate.  *Id.*  VWoA seeks an order, decree, or judgment that GPB specifically perform its obligation to cause the Dealerships to voluntarily terminate.

## FOURTH CLAIM FOR RELIEF:
## <u>DECLARATORY JUDGMENT</u>

43.     VWoA incorporates all preceding paragraphs as though set forth in full herein.  Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § § 2201, 2202, VWoA seeks the appropriate order, decree, or judgment that: (1) GPB Capital Holdings, LLC covenanted not to sue, protest or undertake any civil or administrative action or any other legal proceeding to prevent or delay the Dealerships' termination; (2) the BRA is a valid and enforceable contract between the parties; (3) GPB Capital Holdings, LLC breached the BRA by causing or permitting the Dealerships to file the Arbitration Action; (4) the Arbitration Action seeks to "prevent or delay the Dealerships' termination"; (5) GPB Capital Holdings, LLC covenanted to "pay any and all of VWoA's attorney fees and legal costs associated with the defense of such legal, administrative or equitable action, and in addition, GPB [ ] shall indemnify and hold VWoA harmless from any monetary damages, equitable judgments or fees & costs resulting from any legal, administrative or equitable proceeding ....."; and (6) VWoA is entitled to specific performance of paragraph 14 of the BRA, including performance of the indemnity, hold harmless, and recoupment of costs and fees to defend itself against the Arbitration Action and also to prosecute this action to enforce the BRA.

44.     This declaratory judgment claim is presently ripe because, after VWoA exercised its rights under the BRA, GPB Capital Holdings, LLC repudiated the BRA and

caused the Dealerships to file the Arbitration Action as an effort to undermine the BRA and its enforcement against GPB Capital Holdings, LLC. Thus, there is an actual and justiciable case or controversy and judgment will serve a useful purpose in settling the legal relations at issue and provide to VWoA relief from the insecurity and controversy giving rise to this proceeding.  Such a declaration will effectively adjudicate the rights of the parties.

### **REQUEST FOR RELIEF**

VWoA demands relief against GPB Capital Holdings, LLC for the following:

A.    A declaration that: (1) GPB's change of directors entitles VWoA to the remedies agreed upon by the parties in BRA; (2) GPB's removal and/or termination of David Rosenberg is an event under the BRA that enables VWoA to enforce the requirement that GPB Capital Holdings, LLC divest all ownership interests in the Dealerships; and (3) GPB Capital Holdings, LLC failed to abide by the BRA's divestiture requirement, thus entitling VWoA to enforce the termination remedy;

B.    A declaration that: (1) GPB Capital Holdings, LLC caused, directed or permitted its Dealerships to file the Arbitration Action; (2) the filing of the Arbitration Action is a breach of GPB Capital Holdings, LLC's covenant not to contest or sue; and (3) VWoA is entitled full enforcement of the BRA, including enforcement of its right to recoup all attorney fees and costs associated with the defense of this proceeding and the Arbitration Action, and that GPB Capital Holdings, LLC is required to indemnify and hold VWoA harmless from any monetary damages, equitable judgments, or fees and costs resulting from any legal, administrative, or equitable proceeding.

C.    Judgment awarding VWoA specific performance of the BRA, including ordering GPB to cause the Dealership Agreements for the Prime, Caprara, and Norwood Dealerships to be terminated;

D.    Judgment awarding VWoA relief from the Arbitration Action, including but not limited to ordering GPB Capital Holdings, LLC to cause the  Dealerships to dismiss the Arbitration Action with prejudice;

E.     Judgment awarding VWoA all of its attorneys' fees and legal costs incurred in this proceeding and also in defense of VWoA's rights regarding the Arbitration Action; and

F.     All other relief, legal or equitable, that the Court deems just and proper.


Dated: New York, New York                    Respectfully submitted,
       February 14, 2020

                                             By: */s/ Matthew D. Feil*
                                                 Matthew D. Feil
                                                 mfeil@bakerlaw.com
                                                 BAKER HOSTETLER LLP
                                                 45 Rockefeller Plaza
                                                 New York, New York 10111-0100
                                                 (212) 589-4200  (Telephone)
                                                 (212) 589-4201  (Facsimile)


OF COUNSEL:                                  ATTORNEYS FOR VOLKSWAGEN OF
                                             AMERICA, INC., an operating unit of
Billy M. Donley (*pro hac vice* pending)     VOLKSWAGEN GROUP OF AMERICA,
Texas Bar No. 05977085                       INC.
bdonley@bakerlaw.com
David R. Jarrett (*pro hac vice* pending)
Texas Bar No. 00792188
djarrett@bakerlaw.com
BAKER HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002-6111
(713) 751-1600  (Telephone)
(713) 751-1717  (Facsimile)