UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VOLKSWAGEN GROUP OF AMERICA, INC.,

                Plaintiff,

-against-

GPB CAPITAL HOLDINGS, LLC,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/8/2021_

20 Civ. 1043 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Volkswagen of America ("VWoA"), brings this action against Defendant, GPB Capital Holdings, LLC ("GPB"), asserting claims for declaratory relief and specific performance of a contract between the parties. Defendant moves to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and failure to join necessary parties, pursuant to Federal Rule of Civil Procedure 12(b)(7). For the reasons stated below, the motion is DENIED.

**BACKGROUND**[1]

    VWoA, a motor vehicle distributor, authorizes dealerships throughout the country to sell its motor vehicles pursuant to franchise agreements between it and the dealership. Def. Mem. at 2, ECF No. 35; Bus. Relationship and Settlement Agreement ¶ A, ECF No. 14-1. These agreements call for VWoA's prior approval of certain events, such as changes in ownership. *See, e.g.*, Arbitration Demand at Ex. A at 2, Ex. B at 2, Ex. C at 2, ECF 14-6 at 24, 38, 53. The franchise agreements, along with other aspects of the franchise relationship, are governed by various state laws, which create procedural and substantive rights. *See* Arbitration Demand at

---

[1] The following facts are taken from the complaint and its exhibits, and accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Ex. A at 3,  Ex. B at 3, Ex. C at 3, ECF 14-6 at 25, 39, 54; Mass. Gen. Laws Ann. ch. 93B, §§ 1 *et seq.*; Me. Rev. Stat. tit. 10, §§ 1171 *et seq.*; N.Y. Veh. & Traf. Law § 460.

In 2011, GPB, an "alternative asset management firm" based in New York, decided to invest in motor vehicle dealerships.  Apparently, these transactions were to be consummated by GPB-related entities ("GPB-Related Entities").  Compl. ¶ 7.  In 2014, a GPB-Related Entity acquired an ownership interest in a Volkswagen franchised dealership, without the prior notice to VWoA required by the dealership's franchise agreement.  *Id*. ¶ 8.  VWoA then issued a notice of termination to the franchise, resulting in litigation in New York state court and a settlement agreement mandating certain ownership conditions for that franchise (the "Settlement Agreement").  *Id.* ¶¶ 9, 13.

In 2017, multiple GPB-Related Entities entered into purchase agreements for additional Volkswagen dealerships, including one in Watertown, New York ("Caprara") and another in Saco, Maine ("Prime").  *Id.* ¶¶ 11, 14, 16.  When VWoA learned of the proposed Prime transaction, VWoA "discovered that the terms of the [Settlement Agreement] had not been met." *Id.* ¶ 13.  In consideration of VWoA's promise to not enforce the Settlement Agreement, and in order to permit the purchase of Caprara and Prime, on October 19, 2017, VWoA and GPB entered into a Business Relationship and Settlement Agreement (together with its 2018 amendment, ECF No. 14-2, the "BRA").  *Id.* ¶¶ 14–15; BRA at 1–2.

The BRA provides in pertinent part that certain individuals shall remain as managers and operators of the dealerships and that "neither GPB Group nor any of its owners"[2] shall exercise operational control over the dealerships.  BRA ¶ 7(D).  The BRA also states that VWoA shall

---

[2] In this Order, where the Court directly quotes the BRA, the term "GPB Group" appears.  Otherwise, the Court refers to GPB affiliates or subsidiaries as GPB-Related Entities.

2

have the right to review and approve any "sale, acquisition or change of ownership or voting rights of GPB Group." BRA ¶ 12(A). In addition, if after review of a change of ownership, VWoA determines that the new ownership would be "incompatible with VWoA's . . . interests," VWoA may "require that, within ninety (90) days of notice from VWoA invoking this provision, GPB Group shall (a) transfer all interest in all [d]ealerships to [b]ona [f]ide [t]ransferees. . . ; or (b) voluntarily terminate the [dealership's franchise agreements] associated with each of the [d]ealers." BRA ¶ 12(B).

The BRA was amended in October 2018 in connection with VWoA's consideration of GPB's proposed acquisition of another Volkswagen franchise. ECF No. 14-2. After the BRA was executed, Automile Holdings, LLC, a GPB-Related Entity, purchased a dealership in Norwood, Massachusetts ("Norwood" or, together with Prime and Caprara, the "Contested Dealerships"). Compl. ¶¶ 16, 22; Arbitration Demand at Ex. C, at 3–4, ECF No. 14-6 at 54–55. Each of the Contested Dealerships has a franchise agreement with VWoA (the "Dealership Agreements"). Arbitration Demand at Ex. A, Ex. B, Ex. C, ECF No. 14-6 at 24–25, 38–39, 53–54.

In September 2019, without prior notice to VWoA, GPB replaced the Contested Dealerships' previously approved manager, and removed three individuals from the board of directors of Automile Holdings, LLC. Compl. ¶¶ 19, 23. By letter dated October 31, 2019, VWoA provided GPB with a notice, pursuant to Paragraph 12 of the BRA, requiring GPB to transfer its ownership interests in the Contested Dealerships to a third party. Compl. Ex. 4, ECF No. 14-4. GPB did not do so. Compl. ¶¶ 28–29. Instead, in January 2020, GPB caused the Contested Dealerships to file an arbitration demand against VWoA with the American

3

Arbitration Association, arguing that the BRA violates state franchise laws.  Compl. ¶ 30; *see* Arbitration Demand.

VWoA then filed this action for a declaratory judgment, specific performance, and attorneys' fees, seeking enforcement of VWoA's rights under the BRA, termination of the Dealership Agreements, and the dismissal of the arbitration proceeding.  Compl. at 16–17.

## DISCUSSION

I. <u>Failure to State a Claim</u>

GPB characterizes VWoA's requested relief as "terminat[ing] the [Dealership Agreements] *indirectly through GPB*," Def. Mem. at 1 (emphasis added), and moves to dismiss the complaint for failure to state a claim, arguing that VWoA cannot terminate the Contested Dealerships without following the procedures set forth in state motor vehicle franchise laws.  This motion is DENIED.

A. 12(b)(6) Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

B.  Parties to the BRA

In determining whether state franchise laws apply, the threshold question is whether the Contested Dealerships are parties to the BRA.  The BRA provides that it "shall be construed according to the laws of the District of Columbia."  BRA ¶ 27.  The District of Columbia employs the "objective law of contracts," such that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking."  *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 23 (D.D.C. 2017) (quoting *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013).  If the Court finds the contract language is unambiguous, the interpretation is a matter of law.  *Am. Civil Constr., LLC v. Fort Myer Constr. Corp.*, 246 F. Supp. 3d 309, 321 (D.D.C. 2017).  If the Court determines the contract language is ambiguous, however, it may consider extrinsic evidence to determine the parties' subjective intent.  *Lannan Found.*, 300 F. Supp. 3d at 24.[3]

The Court finds the language of the BRA to be ambiguous.  The opening sentence of the BRA states:

> Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("VWoA") and GPB Capital Holdings, LLC ("GPB") and its automotive subsidiaries and affiliates (GPB and its affiliates and subsidiaries may be collectively referred to herein as "GPB Group"), (VWoA and GPB may be collectively referred to herein as the "Parties") enter into this Business Relationship Agreement . . . on this 19 day of October, 2017.

BRA at 1.  On the one hand, in this sentence the term "Parties" is defined as "VWoA and GPB";

---

[3] Massachusetts, New York, and Maine all follow similar theories of contract interpretation.  *NExTT Sols., LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 457 (D. Mass. 2015); *Orlander v. Staples, Inc.*, 802 F.3d 289, 294–5, 298 (2d Cir. 2015); *Jay Cashman, Inc. v. Portland Pipe Line Corp.*, 559 F. Supp. 2d 85, 88 (D. Me.), *report and recommendation adopted sub nom. Jay Cashman, Inc. v. Portland Pipe Line, Inc.*, 573 F. Supp. 2d 335 (D. Me. 2008).  Insofar as Defendant objects to the choice of law clause of the BRA, therefore, it does not affect the Court's analysis.

5

the term "GPB" is defined as "GPB Capital Holdings, LLC"; and the term "GPB Group" is defined as "GPB and its affiliates and subsidiaries". *Id.* Had the parties wished to include the GPB-Related Entities in the definition of the word "Parties," they could have done so. They did not. *See id.* ¶ 21 ("The words used in this Agreement shall be deemed words chosen by the Parties to express their mutual intent."). One the other hand, the same sentence also provides that "VWoA . . . and . . . GPB . . . and its automotive subsidiaries and affiliates . . . enter into this [BRA]," implying that GPB-Related Entities are also parties to the BRA. *Id.* at 1.

The BRA names only two specific entities: VWoA and GPB. *Id.* ¶¶ A–B. It indicates that notice to "GPB Group" shall be sent to GPB's address. *Id.* ¶ 29. In addition, the BRA states that it is governed by the law of the District of Columbia and that state franchise laws do not apply—both provisions that, if the Contested Dealerships were parties to the contract, would be impermissible under state franchise laws. *Id.* ¶¶ 18, 27; Mass. Gen. Laws Ann. ch. 93B § 15; Me. Rev. Stat. T. 10 § 1174(O); N.Y. Veh. & Traf. Law § 463(t). Moreover, the BRA twice states that "GPB Group shall cause all Dealerships" to act, implying that the Contested Dealerships are separate even from "GPB Group". BRA ¶ 10. However, most of the BRA's provisions impose obligations on and grant rights to "GPB Group," which, as defined, includes the Contested Dealerships as "affiliates and subsidiaries"—i.e., automotive entities owned indirectly by GPB. *See, e.g.*, *id.* ¶¶ 2, 7; Arbitration Demand ¶¶ 9–12, ECF No. 14-6 at 6–7. On the signature page, GPB executed the BRA "on behalf of itself and its affiliates and subsidiaries." *Id.* at 12; *Lannan Found.*, 300 F. Supp. 3d at 26 (finding an individual a party to the contract based on his signature despite his omission from a list of parties). The Court, therefore, cannot conclude that the language of the BRA provides a "clear and definite"

6

indication of which entities are to be bound by the agreement. *Lannan Found.*, 300 F. Supp. 3d at 23.

Because the contract language is ambiguous, the Court looks to extrinsic evidence to determine which entities are parties to the agreement. *See Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001). The amended complaint alleges that "VWoA and GPB entered into [the BRA]," distinguishing GPB from the Contested Dealerships, which VWoA contends are merely "covered [by]" the BRA. Compl. ¶ 15. Two documents are consistent with this assertion. An October 31, 2019 letter from VWoA to GPB states that "[VWoA] . . . and . . . [GPB] are parties to [the BRA] . . . ." ECF No. 14-4, at 2. Likewise, the Contested Dealerships, in their demand for arbitration, allege that "VWoA required GPB to sign [the BRA] . . . GPB signed the BRA on October 3, 2017." Arbitration Demand ¶ 16, ECF No. 14-6 at 8. Conversely, however, the Arbitration Demand also states that, "[t]he BRA is between VWoA and GPB . . . and its automotive subsidiaries." *Id.* ¶ 35.

Considering the ambiguous language of the BRA and the extrinsic evidence, and, at the motion to dismiss stage, resolving all inferences in favor of VWoA, the Court finds that VWoA has alleged sufficient facts which make it plausible that the Contested Dealerships are not parties to the BRA.

With that threshold question answered, the Court will consider the relevant law of the states of Massachusetts, New York, and Maine.

### C. Massachusetts

Norwood is located in Norwood, Massachusetts, and its franchise is governed by Massachusetts law. Compl. ¶ 16; Arbitration Demand at Ex. C at 1–2, ECF No. 14-6 at 53–54;

7

Mass. Gen. Laws Ann. ch. 93B, §§ 1 *et seq.*

> 1. Norwood's Inclusion in the BRA

Initially, GPB argues that VWoA's claims regarding Norwood should be dismissed because Norwood is not listed in the BRA. Def. Mem. at 13–14. The Court, however, finds the BRA ambiguous on this point as well, and cannot determine as a matter of law that Norwood is not covered by the BRA.

BRA Paragraph 12 states that if there is an ownership change event, "VWoA shall have the right to require that . . . GPB Group shall (a) transfer all interest in all Dealerships to [b]ona [f]ide [t]ransferees (subject to Section 7, above); or (b) voluntarily terminate the [Dealership Agreements] associated with each of the Dealers." BRA ¶ 12. The BRA does not define "Dealers" or "Dealerships," though it does define "Settlement Dealerships" and "GPB Controlled Dealerships," and refers to "Volkswagen Dealerships." *See, e.g.*, BRA ¶¶ B, F, 2.

The parties debate the import of Paragraph 2 on the interpretation of Paragraph 12. Paragraph 2 incorporates into the BRA Exhibit B, which is "a list of all Volkswagen Dealerships in which [GPB Group] currently maintains any [o]wnership or [c]ontrol or which it has entered into an agreement to acquire [o]wnership or [c]ontrol," defined in the BRA as the "GPB Controlled Dealerships". BRA ¶ 2. Norwood was purchased by Automile Holdings, LLC after the BRA was executed and is not named in Exhibit B. BRA at 14.

Paragraph 12 does not indicate whether its reference to "Dealers" and "Dealerships" is to the "GPB Controlled Dealerships" defined in Paragraph 2, or to a broader category of "Volkswagen Dealerships," which is not defined in the BRA. Paragraph 12 mentions Paragraph 7. BRA ¶ 12(B). Subsection 7(A) uses two terms: "the Dealerships listed in Exhibit B" and

"Dealerships," seemingly in reference to the same entities. *See* BRA ¶ 7(A). However, another subsection of Paragraph 7 uses only "the Dealerships listed in Exhibit B," *id.* ¶ 7(B), and the subsections of Paragraph 7 setting forth the procedures for notice and divestiture—the subsections relevant to Paragraph 12—do not use the term "Dealerships listed in Exhibit B" at all, but *only* "Dealerships," perhaps to distinguish the two terms, *id.* ¶ 7(E).

VWoA alleges that the parties intended that the BRA cover Norwood. Compl. ¶ 15; *see also* ECF No. 14-4, at 2. Given the ambiguity of the language of the BRA, at the motion to dismiss stage VWoA's pleadings suffice to plausibly allege that "Dealerships" in Paragraph 12 is meant to refer to all dealerships owned by GPB, including Norwood.

### 2. Massachusetts Motor Vehicle Franchise Law

The Court now considers whether Massachusetts law—which, if applicable, would prohibit VWoA's exercise of its rights under the BRA—governs the BRA. Massachusetts motor vehicle franchise law applies to actions "which arise under any written or oral agreement between the manufacturer or distributor with a motor vehicle dealer." Mass. Gen. Laws Ann. ch. 93B § 11. Because GPB concedes it is not a dealer as defined by the state franchise laws, Def. Mem. at 18, and the Court has found that VWoA has plausibly alleged that the Contested Dealerships are not parties to the BRA, a dispute arising from the BRA is not governed by Massachusetts law.

GPB argues that even if VWOA is not acting directly to terminate the Dealership Agreements, it is acting indirectly through GPB, in violation of the Massachusetts law which makes it unlawful for "a manufacturer, distributor or franchisor representative . . . to act to accomplish, either directly or indirectly through any parent company, subsidiary, or agent, what

9

would otherwise be prohibited under this chapter on the part of the manufacturer or distributor." Mass. Gen. Laws Ann. ch. 93B, § 4(c)(12).

Although the statute does not specify which entity's parent company, subsidiary, or agent the franchisor is prohibited from acting through, the law "relate[s] to relationships between manufacturers, distributors, and franchise representatives, on the one hand, and their affiliated dealers, on the other." *Massachusetts State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc.*, 469 Mass. 675, 685 (2014). Therefore, in considering a different subsection of the statute, the Massachusetts Supreme Court noted that it would be "anomalous" for the statute to include "a lone provision giving dealers protection against competition from an unaffiliated manufacturer." *Id.* at 685–86.

Guided by the Massachusetts Supreme Court, the Court reads § 4(c)(12) to prohibit actions through the manufacturer or distributor's parent company, subsidiary, or agent. This interpretation retains the focus on the relationship between the franchisor and franchisee. It is also consistent with other subsections of the statute. In § 4(c)(10), a manufacturer or distributor is forbidden "to own or operate, either directly or indirectly through any subsidiary, parent company or firm, a motor vehicle dealership located in the commonwealth of the same line make as any of the vehicles . . . ." The "any" in § 4(c)(10) logically refers to subsidiary or parent companies of the franchisor. *See Massachusetts State Auto. Dealers Ass'n*, 469 Mass. at 677–78. The Court's interpretation of § 4(c)(12) similarly reads "any" to refer to the franchisor's affiliated entities.

GPB is not affiliated with VWoA. VWoA's demanding that GPB require Norwood to terminate the franchise is, therefore, not a violation of Massachusetts law.

10

D. New York

Caprara, located in Watertown, New York, is covered by New York law. Compl. ¶ 16; Arbitration Demand at Ex. B at 2, ECF No. 14-6 at 39; N.Y. Veh. & Traf. Law § 460. New York motor vehicle franchise law does not specify what disputes it governs, but the provision cited by GPB makes it unlawful for "any franchisor, notwithstanding the terms of any franchise contract . . . [t]o terminate . . . the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise." N.Y. Veh. & Traf. Law § 463(2)(d)(1). "Termination" is defined as "a franchisor's proposed termination, cancellation, non-renewal, or rescission." N.Y. Veh. & Traf. Law § 462.

The BRA states:

> VWoA shall have the right to require that, within ninety (90) days of notice from VWoA invoking this provision, GPB Group shall (a) transfer all interest in all [d]ealerships to [b]ona [f]ide [t]ransferees (subject to Section 7, above); or (b) voluntarily terminate the [Dealership Agreements] associated with each of the [d]ealers.

BRA ¶ 12(b). The BRA specifies that if the provision is invoked, GPB shall "cause . . . the relevant [d]ealership's [Dealership Agreement to be] *voluntarily* terminated." BRA ¶ 7(E)(iv) (emphasis added).

New York motor vehicle franchise law does not cover the voluntary termination of a contract. In *General Motors Corp. v. Villa Marin Chevrolet, Inc*., a court in the Eastern District of New York considered whether a termination breached the New York motor vehicle franchise law. No. 98 Civ. 5206, 2000 WL 271965 (E.D.N.Y. Mar. 7, 2000). The parties had executed a contract in which the dealer was to voluntarily terminate its Chevrolet franchise agreement by a date certain, in exchange for being authorized as a Buick and Pontiac dealer. *Id.* at *2. After

11

various other aspects of the transaction broke down, and after the date set for the voluntary termination, the franchisor terminated the franchise. *Id.* at *5. The court found that § 463(2)(d)(1) was "inapplicable" to the final termination, because "[the] provision plainly prohibits *involuntary* terminations without due cause and proper notice. [The defendant's] termination, on the other hand, was voluntary and pursuant to a written contract." *Id.* at *22 (emphasis in original).

Here, GPB, acting on behalf of its dealerships, entered into the BRA, an agreement that contemplates voluntary termination under certain circumstances. The Dealership Agreements clearly distinguish between termination by a dealer and by VWoA. Arbitration Demand, Volkswagen Agreement Standard Provisions at 18–19, ECF No. 14-7 at 12–13. Moreover, the BRA is not a contract between a manufacturer or distributor and a dealer, as in *General Motors*, but between a distributor and the dealers' parent company, making the application of § 463(2)(d)(1) even more remote. Section 463(2)(d)(1) is, therefore, "inapplicable" to VWoA's claims. *General Motors Corp.*, 2000 WL 271965 at *22.

E. Maine

Prime, located in Saco, Maine, is covered by the law of Maine. Compl. ¶ 16; Arbitration Demand at Ex. A. at 2, ECF No. 14-6 at 53; Me. Rev. Stat. tit. 10, §§ 1171 *et seq.* The Maine motor vehicle franchise law governs "[w]ritten or oral agreements between a manufacturer, wholesaler or distributor with a motor vehicle dealer." Me. Rev. Stat. tit. 10, § 1178(1). Like in Massachusetts, because the BRA is not an agreement between a manufacturer and a dealer, Maine franchise law does not apply.

Moreover, consistent with New York law, Maine's statute does not govern voluntary

termination of a contract. Maine makes it unlawful for a manufacturer to unilaterally "cancel, terminate, fail to renew or refuse to continue any franchise relationship with a licensed new motor vehicle dealer, notwithstanding the terms, provisions or conditions of any agreement or franchise and notwithstanding the terms or provisions of any waiver" unless certain procedures are met. Me. Rev. Stat. tit. 10, § 1174(3)(O). Termination under the BRA is voluntary, and, therefore, not covered by the Maine statute. BRA ¶¶ 7(E)(iv); 12.

VWoA has plausibly alleged that the Contested Dealerships are not parties to the BRA, and that the termination of the Dealership Agreements is not governed by state franchise laws. Accordingly, GPB's motion to dismiss for failure to state a claim is DENIED.

II.     Failure to Join a Necessary Party

    A. 12(b)(7) Legal Standard

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed for failure to join a party under Federal Rule of Civil Procedure 19. Rule 19 sets forth a two-part test for determining whether a court must dismiss an action for failure to join an indispensable party. First, the court determines whether the absent party should be joined if feasible, *i.e.*, whether the absent party qualifies as "required" under Rule 19(a). *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 131 (2d Cir. 2013). Second, if the party is required and joinder is unfeasible, the court then determines whether the party is "indispensable," meaning the prospect of adjudication in the party's absence compels, in equity and good conscience, dismissal pursuant to Rule 19(b). *Id.* at 131–32.

Rule 19(a) provides that the absent party shall be joined in the suit, if feasible, when: (1) in the person's absence, complete relief cannot be accorded among existing parties, or (2) the

13

person "claims an interest" in the subject of the action and the disposition of the action in the person's absence may (i) "as a practical matter impair or impede the person's ability to protect [that] interest," or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by reason of the claimed interest. Fed. R. Civ. P. 19(a)(1)(B).

### B. Necessary Parties

GPB argues the Contested Dealerships are necessary parties based on Rule 19(a)(1)(B)(i), because a judgment in VWoA's favor would result in the termination of the Dealership Agreements without their input in the litigation, thus impeding their ability to protect their interest in their franchises. Def. Reply at 7.

Mere interest in a litigation, even a "very strong interest," does not automatically mean they are a necessary party under Rule 19. *MasterCard Intern. Inc. v. Visa Intern. Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006). Rather, the Second Circuit has held that a third party is necessary where the litigation at issue directly challenges the validity of a contract between the defendant and a third party. *Crouse-Hinds Co. v. InterNorth, Inc*., 634 F.2d 690, 700–01 (2d Cir. 1980). By contrast, where a litigation will affect the rights of a third party with a separate contract between it and the defendant, but the contract itself is not "the basis" of the litigation, the third party is not necessary. *Mastercard Intern., Inc.*, 471 F.3d at 386.

Here, though the Contested Dealerships have a strong interest in the outcome of the litigation, VWoA has adequately alleged that they are not parties to the BRA—the contract that is the subject of this litigation. VWoA is not challenging the validity of the Dealership Agreements or seeking to have them set aside. Were VWoA to succeed in this action, GPB

14

would be required to cause the Contested Dealerships to terminate the Dealership Agreements. Although the Contested Dealerships would be affected, such termination would arise not from the Dealership Agreements, but from the Court's enforcement of the BRA. *See id.* at 387; *Continental Casualty Co. v. American Home Assurance Co.*, No. 05 Civ. 7874, 2008 WL 1752231, at *1, 5 (S.D.N.Y. Apr. 14, 2008) (finding a plaintiff's subsidiary was not a necessary party in a challenge to an insurance contract covering plaintiff and its subsidiary, where any harm to the subsidiary in not being properly insured would come not from "its absence in the litigation, but rather by the insufficiency of arrangements pursuant to the [contract] to cover it in connection with the underlying loss"); *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19 Civ. 226, 2020 WL 4194195, at *5 (E.D.N.Y. July 20, 2020) (denying an individual was necessary where the "[d]efendants do not argue that [the individual] is a party to the [contract], nor have they shown that this is one of the rare instances where joinder of a non-contracting party is necessary").

In addition, the Contested Dealerships will not be prejudiced because GPB can represent their interests. Where a party's interests are aligned with the third party—for instance, because they are parent and subsidiary—their interests can be "well represented" by the party. *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 Civ. 9578, 2006 WL 2266351, at *10 (S.D.N.Y. Aug. 7, 2006); *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09 Civ. 1431, 2009 WL 2135396, at *3 (S.D.N.Y. July 16, 2009). GPB and the Contested Dealerships' interests coincide, as all wish to continue and optimize the Contested Dealerships' businesses. In addition, because VWoA has adequately alleged facts which show that the BRA does not implicate state franchise laws, the Contested Dealerships do not have additional claims or

defenses that could be brought under the BRA.

The Court concludes, therefore, that the Contested Dealerships are not necessary parties, and need not reach the question of whether the Contested Dealerships are joinable or indispensable. Accordingly, GPB's motion to dismiss for failure to join a necessary party is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 33.

SO ORDERED.

Dated: February 8, 2021
   New York, New York

_____
ANALISA TORRES
United States District Judge